FILED

2005 Dec-09  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY E. SMITH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:03-CV-2655-RDP** |
| | } | |
| **JOHN E. POTTER,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Mary E. Smith filed this action against the United States Postal Service ("Postal Service") alleging that her rights under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, were violated when the Postal Service refused (1) to convert her from a part-time flexible clerk to a regular clerk (see Doc. #18 at ¶¶ 17-18), and (2) select her for a Postmaster position at the Shannon, Alabama Post Office (Doc. #18 at ¶ 21).   More particularly, Plaintiff claims she was unlawfully denied these positions due to the Postal Service's perception that she was disabled and unable to perform the essential functions of those jobs.  (Doc. #18 at ¶¶ 22-23).

Pending before the court is the Postal Service's Motion for Summary Judgment (Doc. #28) filed on August 4, 2005.  Plaintiff filed her opposition to summary judgment (Doc. #34) on October 18, 2005, and the Postal Service filed its reply (Doc. #35) on November 1, 2005.  As discussed more fully below, the Postal Service has met its burden of demonstrating the absence of material factual disputes and entitlement to judgment as a matter of law.  Accordingly, the Postal Service's Motion for Summary Judgment is due to granted.

## II.    STATEMENT OF FACTS[1]

### A.    Plaintiff's Pre-Birmingham Work History

Plaintiff began her career with the Postal Service in June 1981 as a substitute rural carrier in Douglasville, Georgia, and became a regular rural carrier in 1984.  AF No. 1.[2]  In December 1990, Plaintiff reported an on-the-job injury which was diagnosed as a herniated disk in her neck and lower back.  AF No. 2.

As a result of her 1990 injury, Plaintiff received worker's compensation benefits.  AF No. 3. Plaintiff was limited in reaching above her head and shoulders, and was also restricted from "heavy lifting of the mail." AF No. 4.  Plaintiff was further prohibited from lifting more than twenty pounds, and from standing all day or sitting in one position for long periods.  AF No. 5.1.  Plaintiff took pain medication at night and went to pain management classes.  AF No. 5.2.

---

[1]These are the facts for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]The designation "AF" stands for admitted fact and indicates a fact upon offered by the Postal Service that Plaintiff has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Plaintiff has adequately disputed a fact offered by the Postal Service, the court has accepted Plaintiff's version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of the Postal Service's Statement of Facts as set forth in Doc. #30 and responded to by Plaintiff in Doc. #34.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 5.2) would indicate the second sentence of paragraph 5 of the Postal Service's Statement of Facts is the subject of the court's citation to the record.  Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Plaintiff's Statement of Facts contained in Doc. #34 and responded to by ARI in Doc. #35.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

In 1992, Plaintiff re-injured her neck and back when she picked up a tray of mail.  AF No. 6.  As a result of her 1992 injury, Plaintiff was off work for approximately eleven months and in May 1993, came back to work for the Postal Service in a limited duty work assignment in which she was restricted to lifting no more than five pounds.  AF No. 7.

In 1994, Plaintiff again had to take leave due to her medical condition, but came back to work for the Postal Service in January 1996 when she accepted a part-time flexible (PTF) modified clerk position in Jonesboro, Georgia.  AF No. 8.  According to Plaintiff, part-time flexible clerk positions differ from regular clerk positions in the way that holiday and leave pay, annual leave, and sick leave are calculated.  AF No. 9.  Plaintiff's job description was described as "modified" or limited because it contained modifications consistent with her physical limitations prescribed by her physician.  AF No. 10.[3]  Pursuant to the collective bargaining agreement that applies to the positions, in order to be "converted" from a part-time flexible clerk position to a regular clerk position, an employee has to reach the top of a seniority list.   AF No. 11.  While Plaintiff was eligible to compete for EAS positions (higher level executive positions within the Postal Service) which were filled through a competitive selection process, there was no authority which would permit the Postal Service to "give" Plaintiff such a position.  AF No. 12.

---

[3]The court notes that while Plaintiff indicates in her opposition that she disputes this particular fact, she has not pointed to any evidentiary basis for challenging the statement.  Her failure to provide a supportive citation to the record is contrary to the summary judgment requirements of Exhibit A and provides the court with a procedural basis to deem the fact admitted.  Additionally, disputing the fact is inconsistent with Plaintiff's admission of fact number 8, which includes the term "modified."  Moreover, the Postal Service relies upon Plaintiff's deposition testimony, which is supportive of the statement.  Finally, the court's independent review of the record has not revealed any substantive disputed issue of material fact.  Accordingly, the fact is admitted, despite Plaintiff's labeling of "disputed."  The court applies similar rationale in its assessment of AF Nos. 11-12, 15-19, 21-24, 26-27, 30-32, 34-35, 38-39, *infra*.

**B.      Plaintiff's Transfer to Birmingham and Effect on Seniority**

In 1997, Plaintiff requested a transfer to Birmingham due to her impending marriage, and accepted a position in Birmingham as a modified part-time flexible distribution clerk.  AF No. 13. Pursuant to the collective bargaining agreement, when an employee requests a reassignment to another location, that employee comes into the new assignment at the bottom of the seniority list for the purposes of becoming eligible to be converted to a regular clerk position.  AF No. 15.  Consistent with this rule, the Postal Service's letter to Plaintiff dated May 12, 1997, regarding her transfer expressly advises:  "UNDER CONDITIONS OF SNOW ARBITRATION AWARD, FOR PURPOSES OF SENIORITY YOU WILL BE ONE DAY JUNIOR TO THE JUNIOR PART-TIME FLEXIBLE CLERK."  (Doc. #31 at Ex. 9 at 1).  Plaintiff did not object to, complain about, or otherwise challenge (through an EEOC complaint or some other charge) the terms of her reassignment to the modified part-time flexible clerk position in Birmingham.  AF No. 14.

**C.      May 2001 Shannon Postmaster Claim**

In 2001, the Postal Service filled a Postmaster position in Shannon, Alabama.  AF No. 25. It was an EAS grade 11 position.  AF No. 25.  Nick Fortunis ("Fortunis") was the official responsible for making the selection for the Shannon position.  AF No. 26.  Fortunis decided to fill the position through the lateral transfer of Lori Hebson ("Hebson"), an EAS grade 11 employee at the time of her transfer.  AF No. 27.   Hebson's selection to the Shannon Postmaster position became effective on May 5, 2001.  AF No. 28.  Plaintiff was a non-EAS, lower grade-level employee (grade 6) at the time Hebson was selected to that position; therefore, Plaintiff was not eligible to be laterally transferred into the Shannon Postmaster position.  AF No. 29.  Fortunis decided to fill the Shannon Postmaster position through a lateral transfer rather than a competitive announcement after Hebson advised him

4

her grade 11 job was being abolished.  AF No. 30.  Plaintiff's physical condition played no role in Fortunis's decision to laterally transfer Hebson into the Shannon Postmaster position, and Fortunis does not recall Plaintiff ever advising him she was interested in the position.  AF No. 31.

###    D.    November 2001 Conversion Claim

In November 2001, Plaintiff was not eligible to be converted from "part-time flexible" status to "regular" status unless she had reached the top of the seniority list.  AF No. 16.  Moreover, Plaintiff was not eligible to be promoted to a regular clerk position until she reached the top of the seniority list, regardless of whether she was in a modified or unmodified PTF position (AF No. 38) and Plaintiff had not reached the top of the seniority list as of November 2001.[4]  AF No. 17.  Wendy Hankins ("Hankins") was the Manager of Human Resources in the Postal Service's Birmingham office and Gloria Tyson ("Tyson") was the District Manager in that office in 2001.  AF No. 18.  In November of that year, Plaintiff asked Hankins to convert her to an EAS position.  AF No. 19.  An EAS position is an executive position which includes most Postmaster positions.  AF No. 20.  Hankins explained that the Postal Service's regulations did not allow for Plaintiff to be converted to or given an EAS position, but that Plaintiff could apply and compete for one.  AF No. 19, 21.

###    E.    Plaintiff's Comparator Evidence

Plaintiff has proffered the names of several Postal Service employees who she claims were treated differently than she was.  AF No. 33.  Most of these individuals were city carriers, rather than rural carriers, and were part of a different union and governed by a different collective bargaining

---

[4]Indeed, Plaintiff still had not reached the top of that list by the time the instant motion was filed.  AF No. 17.

agreement than Plaintiff.  AF No. 34.1.  Also, as a rural carrier, Plaintiff was not a beneficiary of the arbitration agreement known as "Snow II," which applied only to city carriers.  AF No. 34.2.

As Plaintiff was a rural carrier rather than a city carrier, and as she had requested reassignment to Birmingham in 1997, she was not eligible to be converted to a regular employee either under the scope of Snow II or under the terms of the rural carrier collective bargaining agreement.  AF No. 32.1.  Instead, she could only be promoted from PTF to regular status under the provisions of the rural carrier union contract by reaching the top of the seniority list, which she had not yet done.  AF No. 32.2.  Thus, even if the Snow II arbitration agreement applied to Plaintiff, she still would not have benefitted from it due to her request for a transfer to Birmingham and the consequent negative impact on her seniority status.  AF No. 34.2 (*see generally* Doc. #31 at Ex. 10).

No craft[5] employee comparable to Plaintiff was converted to management EAS status while Hankins was the Human Resource Manager of the Postal Service's Birmingham office.  AF No. 24. Furthermore, Hankins and Tyson have said that they do not believe there is any authority to allow such a conversion as requested by Plaintiff, and that they never would have approved any such conversion during their respective tenures at the Postal Service's Birmingham office.  AF No. 22. The proper way to fill an EAS position was either through a competitive announcement or by a lateral transfer of an employee at the same level as the position being filled.  AF No. 23.

---

[5]As explained in the declaration of Kathleen Martin, current Manager of Injury Compensation for the Postal Service's Alabama District, "[p]ostal employees are generally divided between craft employees and management employees."  (Doc. #31 at Ex. 10 § 5).  The clerk craft is represented by the American Postal Workers Union (APWU); the city carrier craft by the National Association of Letter Carriers (NALC); the mailhandler craft by the National Postal Mailhandlers Union (NPMHU); and the rural carriers, like Plaintiff, by the National Rural Letter Carriers Association (NRLCA).  (*Id*. ¶¶ 5-6).

**F.      Physical Limitations Imposed by Plaintiff's Physician**

One of the documents in the Rule 45 record (Exhibit 9 to Doc. #31) contains a description of the job modifications Plaintiff worked under as the result of her physician's recommendations. AF No. 39.  Plaintiff testified that the Postal Service advised her she should submit a report from her personal physician stating that her work restrictions should be lifted.  AF No. 35.  She also has stated that the Postal Service received a report from her personal physician advising that she should remain under the work restrictions previously in force.  AF No. 35.  Plaintiff has made clear that she does not contend the Postal Service perceived her as any more disabled than suggested by the restrictions which were imposed by her own physician.  AF No. 36.  And even after being told by Postal Service officials that she should submit a report from her own physician that her restrictions could be lifted, Plaintiff never submitted any such report.  AF No. 37.

**G.      Administrative and Procedural History**

Plaintiff initially contacted an EEO counselor regarding her claim of discrimination on November 29, 2001.  AF No. 40.  Plaintiff's contact with an EEO counselor on that date was well past the 45-day time limit she was provided by regulation in which to make contact with an EEO counselor regarding the May 5, 2001 selection for the Shannon Postmaster position.  AF No. 41. Plaintiff initiated this lawsuit on September 26, 2003, alleging race and disability discrimination claims arising out of her employment with the Postal Service.  (Doc. #1).  On October 20, 2004, Plaintiff filed an Amended Complaint against the Postal Service and that amendment limited the scope of her allegations to disability discrimination.   (Doc. #18).   Accordingly, the race discrimination claims asserted in her original complaint are no longer at issue in this action.  The only claims at issue are those asserted by Plaintiff under the Rehabilitation Act.

7

## III.   STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases in which there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination.  Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type,

8

for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV.   ANALYSIS

### A.   Failure to Exhaust Administrative Remedies

With the exception of her November 2001 conversion request, Plaintiff's noncompliance with 29 C.F.R. § 1614.105 operates to bar the claims she advances in this case.  As an employee of the Postal Service, Plaintiff's rights to challenge alleged discriminatory acts are governed by administrative rules that differ in important respects from those applicable to employees in the private or public state sector.  One such unique rule is contained in § 1614.105,[6] which applies to federal sector employees and provides in pertinent part:

> (a)   Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filling a complaint in order to try to informally resolve the matter.
>
> > (1)   An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

---

[6]While it does not appear that the Eleventh Circuit has ever issued a reported decision analyzing a dismissal under § 1614.105, that court has made clear that the unexcused failure to timely initiate an administrative discrimination complaint will result in the dismissal of a subsequently filed Title VII lawsuit. *See, e.g., Manning v. Carling*, 786 F.2d 1108, 1109 (11th Cir. 1986).  The court sees no reason to treat differently a federal sector charging party who has failed to timely contact an EEO counselor (as § 1614.105(a) requires) than a non-federal employee who has filed a timely EEOC charge.

> (2)    The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105.

As its language expressly provides, § 1614.105 requires that an aggrieved federal sector employee contact an EEO counselor within 45 days of a suspected discriminatory act. Consequently, as a general rule, a federal government employee is required to initiate contact with an EEO counselor within 45 days of the date of an adverse employment action she wishes to challenge.

Just as with the 180-day period applicable to private Title VII charge filers (*see Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993), *cert. denied*, 513 U.S. 814 (1994)), a court may toll the 45-day time period in the event that a plaintiff has no reason to believe she was a victim of unlawful discrimination. However, logically, a federal plaintiff, like other Title VII litigants, has the burden of establishing that tolling is appropriate. *Cf. Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) (detailing applicable pleading and burden of proof requirements for Title VII administrative preconditions applicable to private plaintiffs). Further, absent a sufficient showing that would justify tolling, if a federal government employee fails to timely notify an EEO counselor about her belief that she is the victim of discrimination, she also will be found to have failed to exhaust her administrative remedies under § 1614.105. After a thorough review of the record, the court finds that, based upon the undisputed evidence, Plaintiff has failed to satisfy the requirements of § 1614.105 with respect to all but one of her claims.

One of the specific personnel actions that Plaintiff raises in this case is the Postal Service's decision to fill the Shannon Postmaster position by laterally transferring Hebson into it effective May 5, 2001.  Therefore, absent any equitable modification, Plaintiff was required to satisfy § 1614.105's requirements on or before June 19, 2001, the date 45 days after May 5, 2001.[7]  *See* 29 C.F.R. § 1614.105(a)(1).

In her opposition brief, Plaintiff candidly concedes that any claim regarding the filling of the Shannon Postmaster position is barred because of failure to timely comply with § 1614.105(a)(1)'s contact with an EEO counselor requirements.[8]  (Doc. 34 at p. 16).  Plaintiff does contend that she has one timely claim against the Postal Service:  "segregating and stalling [her] postal career," which the court understands to refer to Plaintiff's November 2001 request to undergo a fitness for duty examination in an effort to convert from a PTF position to either a regular status clerk or an EAS position.  (*Id.*).  The court agrees with Plaintiff that she has administratively satisfied § 1614.105(a)(1) regarding that particular claim, but finds the claim subject to dismissal for other reasons.

**B.      Plaintiff's Request to Convert**

**1.      Direct Evidence**

------

[7]Alternatively, timeliness may also be measured under § 1614.105(a)(1) by subtracting 45 days from November 29, 2001 (the date on which Plaintiff contacted the EEO counselor).  Under either method of calculation (*i.e.*, counting 45 days forward from the effective date on which the Postal Service filled the position (June 19, 2001), or 45 days back from the date she contacted an EEO counselor (October 15, 2001)), the conclusion is the same:  Plaintiff did not contact the EEO counselor in a timely manner.

[8]The same is true regarding any other untimely adverse employment actions that may be gleaned from Plaintiff's Amended Complaint.  (Doc. #18).

Plaintiff maintains that she has proffered direct evidence of disability discrimination in this case. The two areas of testimony upon which she relies in making this assertion are: (i) Carol Yarbro's[9] ("Yarbro") belief that Plaintiff could neither perform the duties of Level 11 Postmaster nor Supervisor over Window Units due to her physical restrictions; and (ii) Hankins's refusing to authorize Plaintiff to take a fitness examination and telling her, "Libby, you are nothing but a rehab clerk, you don't have any bidding rights. . . . [Y]ou are a rehab clerk, and that's all you're ever going to be." (Doc. #34 § I at 10).

Setting aside any admissibility issues related to these statements, they simply do not constitute direct evidence of disability discrimination. As the Eleventh Circuit has explained:

> Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) (citation and emphasis omitted). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [disability] ⋯ constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir.1999) (citations omitted). "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Bd. of Trustees*, 91 F.3d 1449, 1453-54 (11th Cir.1996). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998).

*Bass v. Board of County Commissioners*, 256 F.3d 1095, 1105 (11th Cir. 2001).[10]

As to Yarbro's testimony, even assuming that it is only subject to one interpretation, it merely describes Yarbro's belief that Plaintiff's physical limitations, as imposed by her doctor, would

---

[9]Yarbro is a former Manager of Injury Compensation for the Postal Service's Alabama District. (Doc. #31 at Ex. 4 at 7). Hankins conferred with Yarbro over Plaintiff's desire to change to a regular full-time clerk. (*Id.* at 39-40).

[10]The court notes that the *Trotter* case cited in *Bass*, has since been abrogated on other grounds by the Supreme Court in *Desert Palace v. Costa*, 539 U.S. 90 (2003).

prevent her from being able to perform certain types of positions within the Postal Service. (Doc. #31 at Ex. 4 at 40 ("[T]he physical restrictions for a postmaster job level 11 were not within her restrictions. . . . [H]er physician is the one that gave her the restrictions, not us.")). None of Yarbro's comments focuses upon (or is in response to) Plaintiff's specific request to undergo a fitness for duty exam in an effort to convert her employment status. Also, Yarbro did not have the authority to convert Plaintiff's status. (Doc. #31 at Ex. 4 at 38 ("Not unless they gave me something in writing to tell me to do it so I could cover myself in the file.")). Accordingly, the evidence does not directly correlate to Plaintiff's only timely claim relating to conversion and, therefore, cannot support a case for direct evidence of disability discrimination.

With respect to Hankins's refusal to authorize a fitness examination, her statements were made in response to Plaintiff's inquiry about changing to regular status and offering to submit to a physical examination. Such a statement is not direct evidence of discrimination for at least two reasons. First, the record shows that Hankins, as a manager at the Postal Service's Birmingham location, had no authority to covert Plaintiff from PTF to a regular full-time clerk due to the terms of the union contract that related to Plaintiff's voluntary transfer from Georgia to Birmingham.[11] As such, sitting for a fitness test would not have had any effect on Hankins's ability to convert Plaintiff's status. Accordingly, the evidence is akin to testimony made by a non-decisionmaker and thus it is not direct evidence. Second, Hankins's comments are subject to more than one interpretation. For example, Hankins's reference to Plaintiff's lack of any bidding rights is consistent with the negative

---

[11]Reading the record in a light most favorable to Plaintiff, it appears that the only person who had the authority to change Plaintiff's position to regular status was District Manager Tyson. AAF No. 21. However, Plaintiff does not attribute to Tyson any discriminatory comments related to her request to convert.

13

effect that her voluntary transfer had on her seniority status.  Accordingly, for the reasons noted above, Plaintiff has not established a direct evidence case of disability discrimination.

### 2.    Circumstantial Evidence

Plaintiff also asserts she has presented circumstantial evidence of disability discrimination. The court concludes that she cannot establish a *prima facie* case and, in any event, has not presented substantial evidence of pretext.

### a.    Plaintiff Cannot Establish a *Prima Facie* Case

To establish a *prima facie* case under the Americans With Disabilities Act ("ADA") or the Rehabilitation Act,[12] a plaintiff must show that she "(1) had, or was perceived to have, a 'disability;' (2) was a 'qualified' individual; and (3) was discriminated against because of her disability." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 (11th Cir.  2004).  A plaintiff has a covered "disability" if she has a physical or mental impairment that substantially limits one or more of her major life activities, has a record of such an impairment, or has been regarded as having such an impairment.  42 U.S.C. § 12102(2).

Here, Plaintiff asserts that the Postal Service perceived she had a disability.  In such a case, a plaintiff must adduce sufficient evidence from which a reasonable jury could conclude that either: "(1) a covered entity [*i.e.*, an employer] mistakenly believes that [she] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).  "In both cases, it is necessary that a covered entity

---

[12]While Plaintiff has brought her case under the Rehabilitation Act, the legal standards applicable to that statute and the ADA are the same.  29 U.S.C. § 791.

entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* Moreover, "[u]nder the 'regarded as' prong, a person is 'disabled' if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception." *Carruthers*, 357 F.3d at 1216 (citing *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002)). Also, "[a]s with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual." *Carruthers*, 357 F.3d at 1216 (citations omitted).

> **i.    Plaintiff Has Presented Insufficient "Perceived As" Evidence**

It is undisputed that Plaintiff suffered from a neck and back impairment which required the Postal Service to incorporate the following doctor-ordered physical restrictions into her job description:

> PHYSICAL RESTRICTIONS:
> INTERMITTENT LIFTING UP TO 5 LBS; INTERMITTENT SITTING, WALKING, STANDING; MAY CHANGE POSITIONS AS PERSONAL COMFORT DICTATES; NO KNEELING OR CLIMBING; NO REPETITIVE REACHING ABOVE SHOULDER LEVEL.

(Doc. #31 at Ex. 9 at 2). While Plaintiff may have some reservations about her physician's assessment of her physical capabilities, no evidence exists from which a reasonable jury could conclude that the Postal Service misunderstood or misapplied Plaintiff's doctor's explicit instructions. Moreover, no evidence exists from which a reasonable jury could conclude that the Postal Service "mistakenly viewed [Plaintiff] as having a substantially limiting impairment that [she did] not have

or alternatively as having a substantially limiting impairment when, in fact, the impairment [wa]s not so limiting." *Sutton*, 527 U.S. at 489.

The mere implementation of doctor-mandated physical limitations does not constitute sufficient evidence that the Postal Service mistakenly regarded Plaintiff as having a neck/back impairment, which substantially limited her in the major life activities of walking, standing and/or lifting.[13]  As the Eleventh Circuit found in *Carruthers* (in a similar evidentiary context in which the employer's knowledge of the plaintiff's condition was limited to her diagnosis and work restrictions):

> We conclude that no reasonable jury could find that Carruthers's evidence established that BSA perceived her impairment as one that substantially limited the major life activities of working or performing manual tasks. Carruthers herself admitted at trial that BSA's knowledge of her condition was limited to her physician's diagnosis of a bilateral hand strain/sprain and her work restrictions. Aside from BSA's awareness of her initial diagnosis and work restrictions, the only other support Carruthers offers for her contention that BSA perceived her to be disabled is the fact that (1) BSA informed her that she would be terminated if she could not maintain a full-time schedule and (2) BSA placed an advertisement for her replacement shortly after learning of her inability to perform the basic tasks of her position.

357 F.3d at 1217.  Similarly, here Plaintiff does not contend that the Postal Service perceived her as any more limited than the restrictions which were imposed by her own physician.

Moreover, according to Plaintiff, the Postal Service allowed her to perform several categories of jobs, including acting in the Postmaster's position, serving in the Customer Relations Coordinator's position, working in the mail room, and overseeing as the Supervisor over the Window Units.  AAF No. 1; AAF No. 2;  (Doc. #34 § II.A. at 13-14).  Also, several of these positions required heavy lifting.  AAF No. 2.  But this evidence is of no help to Plaintiff in this case.  Rather

---

[13]Because the court rules in favor of the Postal Service on other grounds, it does not address questions raised about whether the impairment the Postal Service perceived Plaintiff to have is the type of impairment that would substantially limit a major life activity.

16

than supporting her discrimination claim, this evidence demonstrates that the Postal Service did not

mistakenly perceive Plaintiff to be substantially limited in her capacity to walk, stand, or lift.

### ii.     Plaintiff Has Not Pointed To Any Valid Comparators

Plaintiff has also failed to present sufficient evidence that would suggest she was

discriminated against based upon a perceived disability.   Plaintiff has attempted to identify

employees who worked for the Postal Service and were not perceived to be disabled, but who were

treated more favorably than she.   However, these persons are not suitable "comparators" because

they are not substantially similar to Plaintiff.   The Eleventh Circuit reiterated the standard for

determining whether employees are similarly situated in *Silvera v. Orange County School Bd.*, 244

F.3d 1253 (11th Cir. 2001):[14]

> In determining whether employees are similarly situated for purposes of establishing
> a *prima facie* case, it is necessary to consider whether the employees are "involved
> in or accused of the same or similar conduct and are disciplined in different ways."
> *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.) (quoting
> *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)), *opinion modified by,* 151
> F.3d 1321 (11th Cir.1998). "The most important factors in the disciplinary context
> . . . are the nature of the offenses committed and the nature of the punishments
> imposed."  *Id.* (citations and quotations omitted). In order to satisfy the similar
> offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's
> in order "to prevent courts from second-guessing employers' reasonable decisions and
> confusing apples with oranges." *See Maniccia v. Brown*, 171 F.3d 1364, 1368-69
> (11th Cir.1999) (citations omitted).

244 F.3d at 1259.  In other words, to meet the comparability requirement, Plaintiff must show that

she is "similarly situated in *all relevant aspects* to the non-[protected category] employee." *Silvera*,

244 F.3d at 1259 (citing *Holifield*, 115 F.3d at 1562) (emphasis added).  Thus, for example, she must

---

[14]The court recognizes that *Silvera* involved allegations of discriminatory discipline, but the
legal principles discussed in that opinion (and in others) regarding comparators still provide useful
insight into the nature of the similarly situated standard.

demonstrate that the reported misconduct and/or work history of the comparator was "nearly identical" to hers. *Nix*, 738 F.2d at 1185. Plaintiff cannot make this necessary showing. In particular, she has not identified one employee, subject to the rural carrier union contract, who made a voluntary transfer, such as she. In fact, as pointed out by the Postal Service, most of the persons who Plaintiff has identified as "comparators" are city carrier employees who are subject to different collective bargaining terms than the rural carriers and to the provisions of Snow II. Thus, any comparison of the Postal Service's treatment of them is simply not helpful to Plaintiff. (Doc. #31 at Ex. 10 ¶¶ 13-14).

Similarly, the two former rural carriers, Allen Worsham and Carol McKee, who were converted to modified EAS positions are not valid comparators either.[15] (*Id.* ¶ 16). Unlike Plaintiff, neither Worsham nor McKee ever requested a transfer to another office prior to receiving a change in job status. Also, these purported comparators were converted in 1996 and 1997, prior to the time that Hankins and Tyson came to the Postal Service's Birmingham office. As the Seventh Circuit has explained, "different employment decisions concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a *prima facie* case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). Hankins and Tyson believe that the Postal Service's regulations do not permit an employee in Plaintiff's position as a PTF clerk to be given an EAS position without competing for same. Furthermore, consistent with their stated understanding,

---

[15]The final person, Carryl Ann Spillman, is also not a valid comparator of Plaintiff as she was in an EAS executive position when she suffered a work-related injury and never was given a "rehab job offer." (Doc. #31 at Ex. 10 ¶ 15).

no other employee comparable to Plaintiff has received an EAS position after Hankins became

Human Resource Manager and Tyson District Manager of the Postal Service's Birmingham office.

### iii.   Plaintiff Has Not Suffered An Adverse Employment Action

The court also has significant concerns about whether Plaintiff's conversion claim meets the

requirements to constitute an adverse employment action.  To be considered an adverse employment

action, "the action must either be an ultimate employment decision or else must 'meet some threshold

level of substantiality.'" *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004) (citing

*Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001)).  In

*Wideman v. Wal-Mart,* 141 F.3d 1453, 1456 (11th Cir. 1998), the Eleventh Circuit coined the term

"threshold level of substantiality" and held that Title VII's protection against retaliatory

discrimination extends to certain adverse actions that fall short of an ultimate employment decision:[16]

> Although we do not doubt that there is some **threshold level of substantiality** that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause, we need not determine in this case the exact notch into which the bar should be placed. It is enough to conclude, as we do, that the actions about which Wideman complains considered collectively are sufficient to constitute prohibited discrimination. We need not and do not decide whether anything less than the totality of the alleged reprisals would be sufficient.

*Id.* (emphasis added).  However, not everything that makes an employee unhappy constitutes an

adverse employment action.  For a decision to be considered an adverse employment action, it must

materially alter the employee's compensation or terms, conditions, or privileges of employment.

*Bass,* 256 F.3d at 1118.  A materially adverse change in the terms and conditions of employment

must be more disruptive than a mere inconvenience or an alteration of job responsibilities.

---

[16]This test for establishing an adverse employment action applies equally to claims of disability discrimination.

*Hartsfield v. Miami-Dade County*, 90 F. Supp. 2d 1363, 1374 (S.D. Fla. 2000) (quoting *Crady v.*

*Liberty National Bank*, 993 F.2d 132, 136 (7th Cir. 1993)), *aff'd*, 248 F.3d 1179 (11th Cir. 2001)).

Moreover, the employee's subjective view of the significance and adversity of the employer's

action is not controlling; whether the employment action is materially adverse is determined, at least

in part, by applying the reasonable person in the circumstances standard. *Davis v. Town of Lake*

*Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (explaining interplay of reasonable person

standard). Indeed, the determination of whether something constitutes an adverse employment

action must be made on a case-by-case basis and, like the hostile work environment analysis,

contains both an objective and a subjective component. *Hansen v. Perry Technologies*, 206 F. Supp.

2d 1223 (S.D. Fla. 2002) (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th

Cir.1998)). A complaint regarding job classification, like that raised by Plaintiff here, are similar

to claims about reassignments and/or resource reallocations, which the Eleventh Circuit has

explained, are subject to a particularly careful review as to the adversity requirement:

> Work assignment claims strike at the very heart of an employer's business judgment
> and expertise because they challenge an employer's ability to allocate its assets in
> response to shifting and competing market priorities. The same concern exists for
> public entities such as the Town's Police Department, which must balance limited
> personnel resources with the wide variety of critically important and challenging
> tasks expected of them by the public. For these reasons, applying the adverse action
> requirement carefully is especially important when the plaintiff's claim is predicated
> on his disagreement with his employer's reassignment of job tasks.

*Davis*, 245 F.3d at 1244.

Plaintiff's November 2001 conversion claim appears to have two interconnected subparts:

1) Hankins's refusal to approve Plaintiff for a fitness for duty exam; and 2) the positive impact that

the results from the fitness for duty exam would have had on Plaintiff's ability to convert her

20

employment status.  Based upon a totality of the circumstances, the court struggles to see how these constitute an ultimate employment decision or are substantial enough to support an adverse employment action.

First, unlike a demotion or a failure to promote, the failure to convert is not an ultimate employment decision in the conventional sense.  By the terms of her union contract, Plaintiff's eligibility to convert was negatively affected by her voluntary decision to move to Birmingham, which by rule downgraded her seniority status.  However, her seniority level was not frozen indefinitely, and had the potential to improve.  Second, even if Hankins had agreed to let Plaintiff sit for a fitness for duty exam, the results of such a test would not necessarily prove Plaintiff's fitness and, even if favorable to her, would not guarantee a change in Plaintiff's status due to her doctor-imposed restrictions and her low seniority level.  As such, any connection between Hankins refusal and Plaintiff's ability to convert is attenuated at best.  Third, even if Plaintiff subjectively felt adversely affected by the Postal Service's treatment of her, objectively, a reasonable person – who had been told by her doctor to adhere to certain job restrictions and who was subject to a union contract with seniority provisions rewarding employees who do not request interoffice transfers – would not have similar feelings of unfavorable treatment.

> **b.    In Any Event, Plaintiff's Rehabilitation Act Claim Fails Because She Has Not Presented Sufficient Evidence of Pretext**

Even if Plaintiff could establish a *prima facie* case, her disability discrimination claim would still fail due to her inability to show pretext.  In addressing the issue of pretext, the Supreme Court has stated:

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original).  Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record:  1) conclusively demonstrates some other, nondiscriminatory basis for the decision; or 2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.  Furthermore, the crucial examination at the pretext level is whether the employer has honestly explained its actions, not whether the court would make the same decisions.

Plaintiff has not pointed to any evidence from which a reasonable jury could conclude that the Postal Service's explanations for its treatment of her were a pretext for (or a lie to conceal) its true motivation – illegal discrimination based upon its mistaken perception that she was disabled. For example, the Postal Service has stated that its reason for not converting Plaintiff from a PTF position to a  regular full-time clerk  is because the change was disallowed under the terms of the collective bargaining agreement.[17]  More specifically, the Postal Service explained that Plaintiff had

---

[17]Plaintiff has not advanced any argument which would call upon the court to balance the Postal Service's rights and obligations under the collective bargaining agreement with Plaintiff's protections under the Rehabilitation Act.

lost her seniority as a result of her voluntary transfer to Birmingham and that she would have to reach the top of the seniority list to bid on a regular position. Similarly, with respect to conversion to an EAS position, the Postal Service has explained that those jobs are filled through competitive announcements or by laterally transferring an employee of the same grade into that position.  As explained below, Plaintiff has not pointed to any valid comparators (or any other evidence for that matter) that would call into question either one of these explanations.  Moreover, to the extent that Tyson had the authority to change Plaintiff's status (and decided not to exercise this discretion), Plaintiff has failed to adduce any evidence from which a reasonable trier of fact could conclude she was motivated by a discriminatory animus against Plaintiff (or in favor of similarly-situated employees who were not perceived as disabled).  Therefore, for this additional reason, the Postal Service is entitled to summary judgment on Plaintiff's failure to convert claim.

## V.    CONCLUSION

The Postal Service has carried its burden on summary judgment of demonstrating that there are no material facts in dispute and that it is entitled to judgment as a matter of law.  Accordingly, the court will enter an order granting the Postal Service's Motion for Summary Judgment and dismissing this action with prejudice.

**DONE** and **ORDERED** this _____9th_____ day of December, 2005.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

23